The next case today is Berkshire Place Associates, LP et al. versus MDG Real Estate Global Limited et al. Appeal number 21-1820. Attorney Yellen, please introduce yourself for the record to proceed with your argument. Yes, good afternoon. May it please the court, my name is Richard Yellen and I represent the appellants MDG Global Real Estate Limited in connection with this contract dispute. Mr. Chief Judge, I respectfully request two minutes reserve for rebuttal. You may. Thank you. Just briefly, this dispute involves a failed real estate acquisition involving a skilled nursing facility located in Rhode Island. The parties I represent the purchaser in the failed deal. This dispute involves the entitlement to a very substantial down payment in connection with that contract deposit. The parties went to contract to acquire the nursing home located in Rhode Island. Ultimately, under the terms of the contract, my client... Counsel, I think we know the background respectfully. You extended invitation to us that seems to me completely at odds with the way in which we are supposed to review these challenges to arbitration award. You suggest, why don't you, the court of appeals, look at the email exchanges, the interaction between your client and the officials at Berkshire, and we should decide for ourselves whether those exchanges comply with this paragraph 3A amendment to the agreement. I mean, that invitation suggests to me frankly that you do not understand the very limited way in which we are supposed to review your claims here. I mean, are you suggesting that we review and independently make a judgment whether you've complied, whether your client complied with paragraph 3A? Is that what you're asking us to do? Well, in part, Your Honor, but I would temper it as follows. I think this is a unusual case, and I would agree with Your Honor that typically we would have no relief from an arbitration award. The unusual fact here, and frankly, if it was almost any other jurisdiction other than Rhode Island, I don't think we would be before this court making this to review contract claims that have been decided by an arbitration panel where there's been a disregard of clear and unambiguous contractual language, or if the result of the arbitration is irrational, or if the arbitrator has manifestly disregarded a contractual term. So, that's just boilerplate stuff. There's nothing unique about Rhode Island law in that regard. Understood, Your Honor. I think, putting aside, and I understand the court's frustration in having to be asked to look at emails and whether the objections are valid or invalid, but this is a you ask us to do our job. I just think you'd misconstrue what our job is in a case like this. Well, I think, Your Honor, even assuming that the court accepts the arbitration result or conclusion that the objections were somehow valid, even though they imposed, as we argue, a completely subjective standard to requiring us to justify the nature of the objection, even though it was in our sole discretion to terminate the contract. The heart of the issue here, from a legal point of view, Your Honor, is the arbitrator and the court below went far beyond their mandate in in making a determination that, if we failed, if my clients failed to properly follow the termination procedure under the due diligence provisions, that that resulted, as a matter of contract or as a matter of law, in the appellee's entitlements to the escrow deposit. In fact, even assuming that the objections were invalid and that we didn't properly terminate the agreement, and that's what the arbitrators found, by the way, and also the court below specifically found that the panel determined that MDG did not properly terminate the agreement. Well, the contractual, going back to the underlying contract at Appendix 1398, Paragraph 6, the very end of that paragraph, it says, if buyer does not terminate this agreement pursuant to the immediately previous sentence, on or before 5 p.m. Boston time, etc., on the due diligence date, buyer shall be deemed to have chosen to proceed with the agreement and accept any unresolved objections without a reduction in the purchase price. So, as a matter of law and as a matter of contract, the arbitration panel and the court below erroneously determined and awarded the deposit to appellees based on an erroneous reading of the contract. Counsel, when did your client ever give an indication that it wanted to proceed with the purchase? I mean, its position was that we went out of this deal. There was never a hint that your client wanted to proceed with a purchase. We attempted to terminate under the due diligence provision, obviously unsuccessfully according to the arbitrators, we disagree, but that occurred on May 11th, 2018, Appendix 1435. Clearly, the appellees considered the contract to still be in force and effect. They rejected our termination. On June 21st, 2018, they served their own notice of termination. The contract itself did not require a closing date until August 1st, 2018, and accordingly, our call it ineffective termination of the due diligence pursuant to the due diligence provision merely meant that the contract continued as a matter of law, okay, and that we had, whatever the intention may have been, we had the contractual right to close on August 1st, 2018. That was preempted by what, in essence, was an anticipatory repudiation of the agreement resulting from appellees June 21st, 2018 termination of the contract. They didn't give a ground as to why they terminated. That's in Appendix 259. There's a reference to that in their complaint to the arbitration panel. Again, the necessary finding, if my client did not properly terminate the agreement, it did not result in a breach. There was no finding by the arbitration panel that the failure to properly terminate or go through the protocol provisions of the due diligence paragraph meant that that was a breach of contract. It's simply ineffective in terminating the agreement and that the agreement continued. The agreement could not be terminated by either party at that point until the closing date, August 1st, 2018. There's dicta in the arbitration agreement or the award that talks about failure to obtain licensing as an alternate ground. That was determined to be moot. The district court did not rubber stamp that and did not mention it in its opinion. The last thing I'll simply say is that by virtue of the continuation of the contract, it was terminated June 21st. That gave rise to anticipatory repudiation, excusing my client from further performance. These facts should not result in an extreme forfeiture and a windfall for the opposing side. Thank you. Thank you, Mr. Yellen. Please unmute your audio and video at this time. Attorney Carter, please introduce yourself on the record to begin. Your Honor, it's Nicholas Carter on behalf of Appellees, which I'll refer to as Berkshire for convenience. May it please the court, the court has heard the applicable boilerplate, well-accepted legal standard for this court to review the arbitration award. It's extremely limited, as the Rhode Island Supreme Court has stated and other courts. This is an award that arose after written discovery, depositions, a three-day hearing. It was a unanimous award by three arbitrators in favor of Berkshire that ordered the $1.4 million deposit to be turned and the termination was not a refundable event. First, the panel found that the procedure for termination is unambiguous. It required MDG, one, to notify Berkshire in writing of objections, and two, to meet in person or by telephone on or before the due diligence deadline to discuss any such objections. The panel found MDG did neither. There was only one possible written objection, an email from attorney Brendan Campbell on April 20, 2018, who stated a concern about a $600,000 discrepancy in the revenue of the facility. The panel found it was not styled as an objection, and more importantly, there was no $600,000 discrepancy. Why don't you respond to the argument that your opponent focuses almost entirely on? The arbitrators concluded there was no due diligence determination here. He says, okay, under the contract, that means we shall be deemed to have chosen to go ahead with the deal. We can't terminate, so we're going to have to go ahead with the deal. I guess his argument is that the arbitrators manifestly disregarded that provision of the agreement. I think that's the issue you need to address. There are two responses. One is the arbitration panel found that MDG terminated the deal. The question then was, was it a refundable event? They determined this was not a due diligence termination, and therefore under Section 18 of the Asset Purchase Agreement, unless it's a due diligence termination, that's the only provision here that would apply. It's not a refundable event, and the deposit goes to Berkshire. They then go through the factual analysis, which I was beginning to go through, about why it wasn't a due diligence termination. Namely, there wasn't a written objection to Berkshire, and there wasn't a in-person or telephonic discussion of any objection. For that reason, they concluded it was not a due diligence termination, and under the express terms of the agreement, it's not a refundable event. They then go on to say, in addition, we will discuss the other basis that would support this award, which is what would be considered a buyer's breach, and that goes to the license and the failure of MDG to apply for a license to operate a skilled nursing home facility, which is required by law in Rhode Island and was part of the agreement that they must do so. In the end, the deadline for that, after multiple extensions, and this is made clear in the award, the arbitration award, the deadline was April 20, 2018. That deadline came and went, and as the arbitration panel discussed, prior to that deadline, they had not made any application or effort to apply. In fact, they had secretly informed their licensing attorney not to proceed with any efforts to apply for that license. They told that licensing attorney the deal was on hold. They did not tell Berkshire that the deal was on hold. They did not tell Berkshire that they had told their attorney not to make any efforts toward the requirement that they apply for a license. As a result, the panel concluded that this was a buyer's breach, which entitles the seller to the $1.4 million deposit. Under either of those analytical frameworks, the arbitration award is supported, and those were the two grounds for the award to Berkshire of the deposit. With respect to the license, it is also important to point out that this really helps to demonstrate what was really going on here. MDG was playing games with Berkshire without being honest about its intention. It was keeping secret its views about the deal being on hold for as long as possible in the hope that MDG, which outbid all the other five or so original bidders, could somehow renegotiate a better price. The panel itself saw this going on and pointed it out in its decision. They wrote, ìThe panel does not believe that MDG intended to pursue the license until it somehow managed to whittle down the purchase price.î The panel saw clearly what was going on here, this effort to get a more favorable term of the purchase price. Theyíd bid $21 million in the first round of bidding, and then to secure an option, it wasnít an option, but to them it was an option to get the deal, they bid very high at $28 million, and then they strung along Berkshire until all the other bidders were gone. They were obviously doing this, and we see that because behind the scenes they were not even making an effort to do what they needed to do to take on a skilled nursing facility. I think the rest of our argument is laid out in our brief, and itís in our view a straightforward application of law with a limited judicial review here. The arbitration panel supported its finding with a careful analysis of the facts and a correct analysis of the terms of the asset purchase agreement. That was also found to be the case by the federal court below, the trial court, and we would ask, Berkshire asks, that you affirm that award. If the panel has no further questions, weíll rest on our papers. Thank you. Thank you, Attorney Carter. At this time, you can mute your audio and your video. Attorney Yellen, please reintroduce yourself on the record for a two-minute rebuttal. Yes. May the Court, Richard Yellen, once again for MDG Global. I just want to take just a moment to correct one or two things that my opponent, Mr. Carter, said. First, he indicated that the due diligence termination was not a due diligence termination. We would object to that characterization, and I think if the Court would look at page 1579 of the lower court, the district courtís opinion, the judge specifically found that the panel determined that, ìMDG failed the agreement.î So there was no termination, effective termination that was found either by the arbitration panel or by the court below, and so I just want to correct that for the record. Again, Iím not going to burden the court with going through emails and whether or not a certain email qualifies as an objection or not. Weíll rely on our brief for that. Our position is that we fully complied with the termination provision, which was in our sole discretion. But more importantly, the issues that Mr. Carter raised are largely irrelevant. If the contract continued as a matter of law, it could not be terminated for failure to obtain a license to operate the facility until August 1st, because thatís what the contract said. By virtue of their premature termination, they excused any further performance by us in connection with that contract, and therefore, the contract deposit should go back to us and there should be no unjust enrichment or forfeiture or penalty. Now, this isnít in the record, but I would note for the court to take judicial notice of the fact that this facility was in fact sold to a third party. This is the case. Thank you very much. May it please the court. Thank you. That concludes argument in this case. Attorney Yellen and Attorney Carter, you should disconnect from the hearing at this time.